**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**KIMBERLY ST. LOUIS, on behalf of D.H.,**

                      **Plaintiff,**

    **vs.**                                              **7:11-CV-847 (NAM)**

**COMMISSIONER OF SOCIAL SECURITY,**

                        **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

Louise M. Tarantino, Esq.
Empire Justice Center
119 Washington Avenue
Albany, New York 12210
For Plaintiff

Hon. Richard S. Hartunian, United States Attorney
John M. Kelly, Esq., Special Assistant United States Attorney
Social Security Administration
Office of Regional General Counsel, Region II
26 Federal Plaza - Room 3904
New York, New York 10278

**Norman A. Mordue, Senior U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

On April 30, 2008, plaintiff filed an application for supplemental security income ("SSI") on behalf of her son, D.H, who was then seven years old. T.12.[1] Plaintiff claimed that D.H. suffered from attention deficit hyperactivity disorder ("ADHD") and borderline intellectual functioning. T.15. On October 14, 2010, a hearing was held before Administrative Law Judge

---

[1] "(T.)" refers to pages of the Administrative Transcript, Dkt. No. 7.

("ALJ") Elizabeth W. Koennecke; plaintiff and D.H. testified. T. 26-42. On December 17, 2010, the ALJ issued a decision denying plaintiff's claim for benefits. T.12. The Appeals Council denied plaintiff's request for review. Plaintiff, on D.H.'s behalf, brought this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, and asks the Court to reverse the Commissioner's decision to deny disability benefits and remand for a calculation of benefits. Presently before the Court are the parties' cross-motions for judgment on the pleadings. Dkt. Nos. 12, 16.

## II.  DISCUSSION

Plaintiff argues: (1) that the ALJ erred in finding that D.H. has less than marked limitations in the domains of acquiring and using information and interacting and relating with others; (2) that the ALJ erred when weighing the opinion evidence; and (3) that the legal standard the ALJ employed when considering the "effects of medication and structured or supportive settings" on D.H.'s limitations, was incorrect.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

The Social Security Act defines a child, an individual under the age of eighteen, as disabled and eligible for SSI benefits: "if he has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

2

than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). There is a three-step evaluative process to determine whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; *Kittles ex rel. Lawton v. Barnhart*, 245 F.Supp.2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, No. 02Civ.3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003). The first step of the test, which bears some similarity to the familiar, five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. 20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp.2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. 42 U.S.C. § 1382c(a)(3)(c)(ii); 20 C.F.R. § 416.924(b).

If the child has not engaged in substantial gainful activity, then the second step requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are severe – that is, which causes more than a minimal functional limitation. 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp.2d at 488; *Ramos*, 2003 WL 21032012, at *7. If the existence of a severe impairment is discerned, the agency must next determine whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth by regulation, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). *Id.* Equivalence to a Listing can be either medical or functional. 20 C.F.R. § 416.924(d); *Kittles*, 245 F.Supp.2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability, and the twelve month durational requirement is satisfied, the child will be deemed disabled. 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Under the Social Security Regulations (the "Regulations"), analysis of functionality is

performed by consideration of how a claimant functions in six areas which are denominated as "domains," and described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The functional domains include:

> (I) [a]cquiring and using information;
> (ii) [a]ttending and completing tasks;
> (iii) [i]nteracting and relating with others;
> (iv) [m]oving about and manipulating objects;
> (v) [c]aring for [oneself]; and
> (vii) [h]ealth and physical well-being.

20 C.F.R. § 416.926a(b)(1). A finding of disability is warranted if a "marked" limitation, defined as when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities," 20 C.F.R. § 416.926a(e)(2)(I), is found in two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. Functional equivalence also exists in the event of a finding of an "extreme" limitation, meaning "more than marked," representing an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities," and this rating is only "give[n] to the worst limitations". 20 C.F.R. § 416.926a(e)(3)(I); *see also Morgan v. Barnhart,* No. 04Civ.6024, 2005 WL 925594, at *11 (S.D.N.Y. Apr. 21, 2005).

### A.     ALJ's Decision

Using the three-step disability evaluation, the ALJ found at step one that D.H. has never engaged in any substantial gainful activity. T.15. At step two, the ALJ concluded that D.H. has the following severe impairments: ADHD and borderline intellectual functioning. T.15. At step three of the analysis, the ALJ found that neither of D.H.'s severe impairments meet, medically equal, or functionally equal any of the listed, presumptively disabling conditions set forth in

4

Appendix 1 of the Regulations. T.17. The ALJ evaluated D.H.'s functional abilities in the six domains established by 20 C.F.R. § 416.926a(b)(1) and found that he had a marked limitation in attending and completing tasks, "less than marked" limitations in acquiring and using information and interacting and relating with others. T.20, 22. The ALJ found that D.H. had no limitations in moving about and manipulating objects, in caring for himself or with respect to his health and physical well-being. T.23-25. Finding that D.H. had a marked limitation in one domain, the ALJ concluded that D.H. was not disabled. T. 25.

**B.     Functional Domains**

In addition to having a marked limitation in the domain of attending and completing tasks, plaintiff claims that D.H. has marked limitations in acquiring and using information and interacting and relating with others. As stated, a finding of disability is warranted if a marked limitation is found in two domains. 20 C.F.R. § 416.926a(a).

**1.     Acquiring and Using Information**

A claimant of D.H.'s age:

> should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. 416.926(g)(2)(iv). In assessing this domain, the ALJ must consider how well a child acquires or learns information, and how well he can use the information he has learned. *Edmond*

5

*v. Barnhart*, No. 04-CV-6515, 2006 WL 2769922, at *9 (W.D.N.Y. Aug. 9, 2006). The Commissioner encourages the use of school records including non-medical evidence provided by a teacher, who works with a child on a daily basis and observes her in a social setting with peers as well as adults. *Id*. at *10 (holding that the ALJ erred by not considering the report of the claimant's teacher in making a determination on the domain of acquiring and using information) (citing *Matthews o/b/o Dixon v. Barnhart*, 339 F.Supp.2d 1286, 1290, n.8 (N.D. Ala. 2004)); *see also Jones ex rel. SA v. Astrue*, No. o7-CV-0016, 2009 WL 1924763, at *6 (N.D.N.Y. Jul. 1, 2009) (citing 20 C.F.R. § 404.1513(d)(2)(e)). Moreover, opinions and reports from a school psychologist and speech therapist can provide evidence to establish an impairment. 20 C.F.R. § 404.1513(d)(2); 20 C.F.R. § 404.1513(a)(2).

In support of her conclusion that D.H. has "less than a marked limitation" in this domain, the ALJ cited evaluations by D.H.'s first grade teacher, Mary Ward, and his special education teachers, Roxana Howard and Karen Peets. T.19-20. The ALJ also cited the evaluation by "T. Bruni", a SSA medication record review psychologist. The ALJ assigned "[v]ery great evidentiary weight" to the opinions of D.H.'s teachers and "[g]reat weight" to Dr. Bruni's evaluation. T.25. The ALJ acknowledged that D.H.'s "borderline level of intellectual functioning necessarily affects his ability to acquire and use information" and that the "reports by the teachers do reflect some limitation in this area," but found the limitation "less than marked" because it "appears much less when the child is compliant with medication." T.20. The ALJ further stated that: "The teachers have commented that the child is better when on medication regularly, suggesting that they have some knowledge of his performance when not in compliance, raising suspicion that the child may not have been consistently compliant in taking the medication as

6

prescribed." T. 25.

The Court finds that the ALJ's decision is not supported by substantial evidence because the teacher evaluations indicate that D.H. has a marked limitation in this domain. These evaluations directed the teachers to "compare the child's functioning to that of same-age children who do not have impairments" in each of the six domains using a rating scale of: never or rarely has difficulty, sometimes or moderate difficulty, often or marked difficulty or always or extreme difficulty. T.214, T.178.[2]

The evaluations asked the teachers to rate D.H.'s ability to perform a number activities that fell within the domain of acquiring and using information. T. 178, T.214. Ms. Ward indicated that D.H. had "[a] very serious problem" with reading and comprehending written material and comprehending and doing math problems. T.178. Ms. Ward stated that D.H. had an "obvious problem" with the other listed activities and commented that he needed "a great deal of teacher support when completing tasks." T.178.

Ms. Howard stated that D.H. had "[o]ften or [m]arked" difficulty: learning new material, recalling previously learned material, demonstrating short-term memory, reading or comprehending written material, comprehending generally, and following instructions. T.214. Ms. Howard also stated that D.H., who was nine years old at the time, is not "functioning appropriately in comparison to unimpaired children of the same age" and "needs directions read several times, he is reading at a K-1 level. He is disorganized. He spells words without vowels. He often speak[s] too fast and at times is hard to understand." T.214.

Ms. Peets stated that D.H. had "[a]lways or [e]xtreme difficulty" reading or

---

[2]Ms. Ward's evaluation used the scale: no problem, a slight problem, an obvious problem, a serious problem or a very serious problem.

7

comprehending written material and had "[o]ften or [m]arked" difficulty: learning new material, recalling previously learned material, demonstrating short-term memory and comprehending generally. T.220. Ms. Peets indicated that D.H. had "[s]ometime or [m]oderate difficulty": following instructions, expressing ideas and demonstrating problem solving skills. T.220. Ms. Peets stated that D.H. was not "functioning appropriately in comparison to unimpaired children of the same age". T.220. Ms. Peets further stated that D.H.: "is extremely behind same age peers in his reading and language arts skills. He is receiving direct instruction in a special education classroom. he is also experiencing difficulty with math concepts. He receives supplemental support in this area." T.220.

This evidence unequivocally supports plaintiff's claim that D.H. has a marked limitation in acquiring and using information. The ALJ, however, offered no explanation for rejecting it. An ALJ's "'failure to acknowledge relevant evidence or to explain its implicit rejection is plain error.'" *Kuleszo v. Barnhart,* 232 F.Supp.2d 44, 57 (W.D.N.Y. 2002) (quoting *Pagan v. Chater*, 923 F.Supp. 547, 556 (S.D.N.Y. 1996)); *see also Sutherland v. Barnhart*, 322 F.Supp.2d 282, 289 (E.D.N.Y. 2004) ("It is not proper for the [hearing officer] to simply pick and choose from the transcript only such evidence that supports his determination, without affording consideration to evidence supporting the plaintiff's claims."). The ALJ's characterization of this evidence as reflecting "some limitation in this area" is irreconcilable with the teachers' statements that many of D.H.'s difficulties ranged from marked to extreme. The only explanation the ALJ provided for this characterization is that D.H.'s limitation "appears much less when the child is compliant with medication."

Even assuming substantial evidence supports the ALJ's "suspicion", T.25, that D.H. was

8

not "compliant with medication,"[3] there is no evidence that medication improves D.H.'s condition to a degree that would substantiate a finding of a "less than marked" in this domain. While Ms. Ward noted that D.H. "is on medication for ADD" and that "[w]hen he takes his meds he functions much better at school", T.179, Ms. Peets stated that D.H. "is much more unfocused than regular peers, even when he is on medication". T.221. Further, according to D.H.'s 2010-2011 Individualized Education Program ("IEP"), he "continues to exhibit symptoms of inattention, cognitive impulsivity, and distractibility" even when he is on medication. T.231. Thus, the ALJ's finding that medication improved D.H.'s ability to acquire and use information is not supported by substantial evidence.

---

[3]In 2010, Shannon J. Colt-Connaway, M.D., D.H.'s pediatrician, indicated that ADHD medication was started on January 2008. T.282. On October 14, 2010, plaintiff testified that D.H. takes: Concerta in the morning; Ritalin when he comes home from school; Trazodone and Hydroxyzine an hour and a half before he goes to bed; and Singulair right before he goes to bed. T.36. On October 14, 2010, D.H. testified that he takes medication in the morning and at night. T.41.

Plaintiff testified that since he has been on medication, she has noticed that D.H. is "able to sit down for a little more time than if he wasn't on any medication, He's able to concentrate a lot more in school, but he still has to have the one on one. If he doesn't have the one on one he is totally lost." T.38. Plaintiff testified that without medication, D.H. could sit "[l]ong enough that you could say his one name and then he's probably back up." T.39. When he is on medication, plaintiff stated that D.H. can:

> keep up as far, maybe about five minutes, but his resource teacher, one on one, has to still keep redirecting him even one on one, but his resource teacher last year has . . . called a couple times. Even though he was on the medicine she thought he wasn't on the medicine because he was acting like he wasn't on medicine. There is a couple times, by my mistake, got up late, had to rush the kids getting dressed, get them breakfast, and I had forgotten the medicine a couple times. And they called me and I've had to literally go down there and give him medicine because if he doesn't have medicine the school said that they can't control him and I'd have to come get him.

T.39. Ms. Howard reported that D.H. has "[o]ften or [m]arked difficulty taking medication on a regular basis. T.215. Ms. Peets reported that D.H. has "[s]ometimes or [m]oderate" difficulty taking medication on a regular basis but commented that he "[h]as been more consistent with medication being taken." T.221.

9

Finally, the ALJ stated that she accorded "[v]ery great evidentiary weight" to the opinions of D.H.'s teachers. Had the ALJ indeed applied this weight to their evaluations, which uniformly indicated that D.H. had very serious, marked, and extreme difficulties with many of the activities that fell within the domain of acquiring and using information, the substantial evidence would require a conclusion that D.H. had a marked limitation in this domain.

### 2. Interacting and Relating to Others

The domain of interacting and relating with others considers how well the child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). For children of D.H.'s age, the Regulations further provide:

> When you enter school, you should be able to develop more lasting friendships with children who are your age. You should begin to understand how to work in groups to create projects and solve problems. You should have an increasing ability to understand another's point of view and to tolerate differences. You should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.

20 C.F.R. § 416.926a(i)(2)(iv).

In this case, the ALJ concluded that D.H. had a "less than marked limitation in interacting and relating with others." T.22. The ALJ noted that Ms. Howard and Ms. Peet agreed that he had difficulties in this domain, but that the only areas in which he had "[o]ften or [m]arked difficulties" were: following rules, being disruptive, talking out of turn, sharing and taking turns. In the other areas, i.e., getting along with other children and authority figures, making or keeping friends, fighting, lying or blaming others for mistakes, they found that his difficulties ranged from

10

never to moderate. Ms. Ward also agreed that D.H. had problems in this domain, many of which were "obvious", but none were "serious" or "very serious". Plaintiff argues that the ALJ failed to take the evaluations by Richard Liotta, Ph.D., a psychologist, and Cindy Clifford-Ledyard, CCC-SLP, a speech-language pathologist, into account when determining D.H.'s limitations in this domain.

Although the ALJ did not refer to either evaluation in this section, she thoroughly outlined the results of the evaluations in her decision. T.15-16. For example, the ALJ noted that Dr. Liotta observed that D.H.'s social skills "seemed adequate" though he "had diminished speech, was not particularly articulate and did not talk a great deal, but did respond to questions in a fairly unelaborated way." T.15. The ALJ also noted that the speech pathologist found D.H. "was easily engaged in conversation and very willing to do anything asked of him. He was very friendly, attentive and respectful throughout the entire 90-minute evaluation . . . He was loving toward his mother and spoke positively of his brother, sister, his mother's boyfriend and the family dog. T.16. The speech-pathologist found D.H.'s speech "at least 65% to 85% intelligible, depending on the listener's awareness of the content and he was effective in conveying his thoughts and feelings." T.16. Thus, there is substantial evidence to support the ALJ's conclusion that D.H.'s limitation in the area of interacting and relating with others was less than marked.

### C. Weight of the Opinion Evidence

Plaintiff argues that the ALJ erred because she did not specify what weight, if any, she assigned to the findings of the consultative examiners, Dr. Liotta and Ms. Clifford-Ledyard. Plaintiff further argues that the ALJ erred in assigning "great weight to consultant Bruni's assessment", who did not examine D.H. but relied on the consultative examiners' evaluations.

"[B]ecause nonexamining sources have no examining or treating relationship with you,

11

the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions". 20 C.F.R. § 404.1527; *see also Carlantone v. Astrue*, No. 08 Civ. 07393, 2009 WL 2043888, at *5 (S.D.N.Y. Jul. 14, 2009) (considering remand necessary when the hearing officer "briefly discusses [other source's] opinions but fails to explain adequately how they are weighed or why he weighed them as he did").

Dr. Bruni based much of his assessment on the testing results contained in the consultative examiners' evaluations. T.276-81. The ALJ accorded great weight to his opinion, T.25, but failed to specify what weight, if any, she accorded to the opinions of the consultative examiners.

Plaintiff next argues that the ALJ erred when she rejected the opinion of D.H.'s treating physician, Shannon J. Colt-Connaway, M.D. In an "ADHD Questionnaire", Dr. Colt-Connaway indicated that D.H. had marked inattention, impulsiveness and hyperactivity and exhibited "evidence of . . . [d]eficiencies of concentration, persistence, and pace resulting in frequent failure to complete tasks in a timely manner", next to which she wrote in parentheses "when off medication". T.282. The ALJ gave no evidentiary weight to Dr. Colt-Connaway's opinion "because it is the severity of symptoms on medication that must be measured, not off them, and because records are not in evidence supporting her statements." T.17. The treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, *e.g., Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993). Even assuming the ALJ improperly rejected Dr. Colt-Connaway's opinion, the error was harmless since her opinion pertains to D.H.'s limitations in the domain of "attending and completing tasks", which the ALJ found were "marked". T. 21.

**D.    Credibility**

Plaintiff argues that the ALJ improperly discounted her testimony and did not articulate

12

reasons for failing to fully credit plaintiff's testimony. (Dkt. No. 16, p. 14). SSR 96-7p requires ALJs to articulate the reasons behind credibility evaluations:

> The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." ... The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

1996 WL 374186, at *4 (S.S.A. Jul. 2, 1996).

As a fact finder, the ALJ is free to accept or reject testimony of a claimant's parent. *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988). A finding that a witness is not credible must be set forth with sufficient specificity to permit intelligible review of the record. *Id*. (citing *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 648 (2d Cir. 1983). If the child claimant is unable adequately to describe his symptoms, the ALJ must accept the description provided by testimony of the person most familiar with the child's condition, such as a parent. *Jefferson v. Barnhart*, 64 F. App'x 136, 140 (10th Cir. 2003). In such a case, the ALJ must make specific findings concerning the credibility of the parent's testimony, just as he would if the child were testifying. *Id*. (citation omitted) (holding that the finding that the mother's testimony was, "credible only to the extent that [it was] supported by evidence of record" is "standard boilerplate language" and an insufficient explanation of credibility).

Where a significant portion of the record supports the testimony, the ALJ must explain why he has determined that the testimony is not credible. *Smith v. Barnhart*, 157 F. App'x 57, 62 (10th Cir. 2005); *see also Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (ALJ's conclusion that the mother's testimony was, "unconvincing, not substantiated by

13

objective medical findings, and credible only to the extent that claimant's impairments have not produced marked and severe limitations" was insufficient as significant probative evidence supported testimony).

In this case, the ALJ determined that:

> After considering the evidence of record, the undersigned finds that the child claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of his symptoms are not credible, because they are not supported by the evidence of record. The child did not exhibit extreme behavior during the hearing, although the mother alleged he did so elsewhere. The mother told Dr. Liotta that the child's behavior improved on medication and Dr. Colt-Connaway made the same assessment. The speech/language pathologist who evaluated the child noted that he was easily distracted, but also was easily redirected and was very well behaved for a child with severe ADHD.

T. 18-19. Having reviewed the Administrative Transcript in its entirety, the Court finds that the ALJ did not provide a sufficient rationale for questioning plaintiff's credibility. The ALJ relied on the evaluations of Dr. Liotta and Ms. Clifford-Ledyard when rejecting plaintiff's credibility, but, as discussed above, failed to articulate the weight she assigned their opinions.

### E. Structured Setting

Plaintiff argues that the ALJ failed to consider D.H.'s ability to function outside his structured and supportive classroom situation. The "Commissioner's regulations require the ALJ to consider the effects of a structured or highly supportive setting ... on the claimant's functioning and, if the claimant's symptoms or signs are controlled or reduced by the structured environment, the ALJ is required to consider the claimant's functioning outside of the highly structured setting". *Smith v. Massanari*, No. 00-CV-0402C, 2002 WL 34242375, at \*6 (W.D.N.Y. Mar. 17, 2002). The fact that a claimant required a structured setting is, "actually suggestive of greater, rather

14

lesser, limitation". *Cavanaugh v. Astrue*, No. 1:08-CV-637, 2009 WL 4264370, at *7 (N.D.N.Y. Nov. 20, 2009). While the ALJ must consider this factor, the regulations do not direct the ALJ to explicitly discuss these factors in the decision. *Watson ex re. K .L. W. v. Astrue*, No. 07-CV-6417T, 2008 WL 3200240, at *4–5 (W.D.N.Y. Aug. 5, 2008). Courts have, however, remanded when it is evident that the ALJ did not consider the effects of a structured setting. *Gonzalez ex rel. C.C. v. Astrue*, Civil Action No. 1:07–cv–487, 2009 WL 4724716, at *6–7 (N.D.N.Y. Dec. 2, 2009). In this case, the ALJ recounted Dr. Liotta's report, which referenced D.H.'s IEP, need for support in school and status as a special education student, and considered the evaluations by D.H.'s teachers, two of whom were his special education teachers. Thus, the Court finds no basis for concluding that the ALJ failed to consider the impact of D.H.'s structured educational environment on his limitations in the above-discussed domains.

## III. REMEDY

Sentence four of 42 U.S.C. § 405(g) provides that "[t]he court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The Second Circuit has stated that "where the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate." *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004) (citing *Rosa*, 168 F.3d at 82-83). "On the other hand, 'where this Court has had no apparent basis to conclude that a more complete record might support the Commissioner's decision, we have opted simply to remand for a calculation of benefits.'" *Id*. at 385-86 (quoting *Rosa*, 168 F.3d at 83).

Here, the record is complete and further proceedings would serve no purpose, would not produce findings contrary to the Court's conclusions and would cause further delay. If the Court

15

had found legal or factual errors only with respect to the ALJ's credibility determination and determination of the weight to accord the consultative examiners' opinions, remand for further proceedings might be justified. The record, however, contains persuasive proof of D.H.'s marked limitation of function in two domains: acquiring and using information and attending and completing tasks. Thus, a finding of disability is warranted. 20 C.F.R. § 416.926a(a). As discussed, when the [v]ery great evidentiary weight" to which the ALJ found the evaluations of D.H.'s teachers were entitled, is accorded to their opinions about D.H.'s marked and extreme difficulties with many activities related to acquiring and using information, a finding that D.H. has a marked limitation in this domain is required. Thus, further proceedings on remand would serve no purpose. *Martinez v. Commissioner*, 262 F.Supp.2d 40, 49 (W.D.N.Y. 2003) ("Where the existing record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no further purpose, a remand for calculation of benefits is appropriate.").

Further, plaintiff's application for benefits on behalf of D.H. had been pending nearly three years when this case was filed. Delay "is harmful for any litigant, but particularly in connection with benefits for children, which are not to replace lost income, but to enable low-income families to afford special education, medical treatment, physical rehabilitation . . .and personal needs assistance of the child." *Nieves ex rel. Nieves v. Barnhart*, No. 02 Civ.9207, 2004 WL 2569488, at *10 (S.D.N.Y. November 12, 2004) (citing *Maldonado v. Apfel*, 55 F.Supp.2d 296, 297–98 (S.D.N.Y.1999)). Accordingly, the Court, in its discretion, concludes that remand solely for the purpose of calculating benefits is the proper remedy.

## IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** that the Commissioner's motion for judgment on the pleadings (Dkt. No. 16)

is **DENIED**; and it is further

**ORDERED** that plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that the Commissioner's decision is reversed and this matter is remanded solely for calculation of benefits; and it is further

**ORDERED** that the Clerk of the Court is directed to enter judgment for plaintiff and Close this Case.

**IT IS SO ORDERED.**

Date:   June 25, 2014

Norman A. Mordue
Senior U.S. District Judge